**TOWN OF LINCOLN**

v.

**LINCOLN LODGE NO. 22, et al.**

**No. 94–121–Appeal.**

Supreme Court of Rhode Island.

June 22, 1995.

James P. Marusak, Gidley, Sarli & Marusak, Providence, for plaintiff.

Marc B. Gursky, Michael Colucci, Dennis Baluch, for Lincoln Lodge No. 22.

Thomas Hogan, for RI State Labor Relations.

Joseph Keough, for William Strain.

Aaron Weisman, Asst. Atty. Gen., Rebecca Partington, Sp. Asst. Atty. Gen., Francis X. McMahon, for RI Cities & Towns.

Joseph Penza, Jr., for amicus curiae.

## OPINION

MURRAY, Justice.

This matter comes before us on seven certified questions from the Superior Court. *See* G.L.1956 (1985 Reenactment) § 9–24–27; Super.R.Civ.P. 72. The seven questions arise out of Lincoln Chief of Police William P. Strain's request for readmittance into a local police bargaining unit. The facts necessary to reply to the certified questions are set forth below from a statement of facts adopted by the Superior Court. *See* § 9–24–25.

In early March 1991 a collective-bargaining contract was executed for fiscal years 1991, 1992, and 1993 between the town of Lincoln (Lincoln or the town), a duly organized municipal corporation existing and chartered under the laws of Rhode Island, and Lincoln Lodge No. 22, Fraternal Order of Police (lodge No. 22), the exclusive bargaining agent for the bargaining unit consisting of the employees of the Lincoln police department. The contract also included an addendum stating that "until expiration of this contract, the person holding the office of the Chief of Police will not be a member of the Bargaining Unit of FOP Lodge # 22."

In late February 1993, William P. Strain (Strain), chief of police of Lincoln at all times relevant to the instant case, requested "readmittance" to lodge No. 22. However, during the course of 1993 collective-bargaining negotiations with lodge No. 22 for a successor labor contract, Lincoln proposed the exclusion of the position of chief of police from the existing contract and from the contractual definition of "employee" on grounds similar to those articulated in Rhode Island Ethics Commission Advisory Opinion No. 9 (advisory No. 9). Issued on May 10, 1990, advisory No. 9 reasons that because of the conflicts and problems inherent in a chief's inclusion in a bargaining unit for police officers that he or she supervises, *any* chief's inclusion in such a unit would violate the Rhode Island

Code of Ethics. *See* G.L.1956 (1990 Reenactment) chapter 14 of title 36.[1]

Strain, however, rejected Lincoln's proposal to exclude him from lodge No. 22, pointing out that G.L.1956 (1986 Reenactment) §§ 28-9.2-3 and 28-9.2-5 (the Policemen's Arbitration Act) specifically grant any chief of police the right to be included in a local police bargaining unit if he or she so chooses. As such, Strain argued, and he continues to argue, that he is an "employee" as defined in the preamble of the existing contract between Lincoln and lodge No. 22.

On October 19, 1993, Lincoln instituted a declaratory-judgment action in the Providence County Superior Court, seeking clarification of alleged conflicts among §§ 28-9.2-3 and 28-9.2-5, advisory No. 9, and the Home Rule Article, Article 13 of the Rhode Island Constitution. The action named lodge No. 22, Strain, the Rhode Island State Labor Relations Board (RISLRB), and Attorney General Jeffrey Pine as defendants.[2] On November 24, 1993, the Superior Court issued a temporary order preliminarily removing Strain from the collective-bargaining unit and directing the parties to seek certification of necessary questions to this court. In an order dated January 11, 1994, the trial justice certified seven questions for our review and adopted specific factual predicates. Before we turn to address the seven questions in the order in which they were certified, a review of relevant portions of the Policemen's Arbitration Act and subsequent constitutional developments is necessary.

The Policemen's Arbitration Act provides in part that "[t]he organization selected by the majority of the policemen in any city or town shall be recognized by such city or town as the sole and exclusive bargaining agent for all of the policemen of the city or town

police department * * *." Section 28-9.2-5. The act defines "policemen" as "full-time police from the rank of patrolman *up to and including the rank of chief* * * *." (Emphasis added.) Section 28-9.2-3(1). In *Gallucci v. Brindamour*, 477 A.2d 617, 618 (R.I.1984), we had occasion to construe these two provisions, stating: "There is no question that these sections considered together are plain and unambiguous. The certified representative is the sole and exclusive-bargaining agent for *all of the policemen of a city or town including the chief of police.*" (Emphasis added.)

Following the enactment of the Policemen's Arbitration Act and the issuance of *Gallucci,* the people of Rhode Island approved an ethics amendment to the Rhode Island Constitution in November 1986, authorizing the formation of an independent nonpartisan ethics commission to oversee ethics in state government. *See In re Advisory Opinion to the Governor,* 612 A.2d 1, 3 (R.I. 1992). The amendment was subsequently incorporated into the Rhode Island Constitution as article 3, sections 7 and 8. Section 7 provides:

"The people of the State of Rhode Island believe that *public officials and employees must* adhere to the highest standards of ethical conduct, respect the public trust and the rights of all persons, be open, accountable and responsive, *avoid the appearance of impropriety* and not use their position for private gain or advantage. Such persons shall hold their positions during good behavior." (Emphasis added.)

Section 8 states:

"The general assembly shall establish an independent nonpartisan ethics commission which shall adopt a code of ethics including, but not limited to, provisions on

---

1. We note that Lincoln specifically requested an advisory opinion concerning Strain's membership in lodge No. 22 in July 1990, two months after advisory No. 9 was issued. The commission, however, declined the opportunity to clarify the situation, reaffirming its policy that "any advisory opinion requests which involve conduct of any particular individual require the assent and approval of that individual before the advisory opinion request is processed." Chief Strain has yet to request an advisory opinion.

2. The RISLRB was joined as a defendant because Lincoln challenges the parameters of its statutory authority. The Attorney General was named as a defendant because G.L.1956 (1985 Reenactment) § 9-30-11 requires the Attorney General to be served whenever the constitutionality of state legislation is raised. Additionally, on appeal the Rhode Island State Lodge Fraternal Order of Police and the Rhode Island League of Cities and Towns have submitted briefs in the capacity of amici curiae.

conflicts of interest, confidential information, use of position, contracts with government agencies and financial disclosure. All elected and appointed officials and employees of state and local government, of boards, commissions and agencies shall be subject to the code of ethics. The ethics commission shall have the authority to investigate violations of the code of ethics and to impose penalties, as provided by law; and the commission shall have the power to remove from office officials who are not subject to impeachment."

Article 15, section 4, of the Rhode Island Constitution required the General Assembly to adopt implementing legislation for article 3, sections 7 and 8. In accordance with this constitutional mandate, in 1987 the General Assembly created the fifteen-member Rhode Island Ethics Commission (commission). Shortly thereafter, the General Assembly established the Rhode Island Code of Ethics in Government to set minimum standards of acceptable behavior for public officials and employees. G.L.1956 (1990 Reenactment) chapter 14 of title 36. With this background in mind, we now turn to address the first certified question.

I

ARE G.L.1956 (1986 REENACTMENT) §§ 28–9.2–3 AND 28–9.2–5 AND RELATED STATUTES UNCONSTITUTIONAL, ILLEGAL, VOID, AND/OR UNENFORCEABLE TO THE EXTENT THAT THEY MAY BE CONSTRUED TO REQUIRE MEMBERSHIP OF THE CHIEF OF POLICE IN THE BARGAINING UNIT OF LINCOLN LODGE NO. 22, FRATERNAL ORDER OF POLICE, IN VIOLATION OF ARTICLE 3, SECTIONS 7 AND 8, OF THE RHODE ISLAND CONSTITUTION?

Lincoln contends that §§ 28–9.2–3 and 28–9.2–5 violate article 3, sections 7 and 8 of the Rhode Island Constitution.[3] Specifically, Lincoln avers that by forcing Strain's inclusion into lodge No. 22, the Policemen's Arbitration Act directly conflicts with article 3,

section 7's directive that "public officials and employees * * * avoid the appearance of impropriety * * *." As such, Lincoln asserts that §§ 28–9.2–3 and 28–9.2–5 have been superseded by article 3, section 7. We disagree.

We note that "[u]nlike the United States Congress, the Rhode Island General Assembly does not look to our State Constitution for grants of power." *Kass v. Retirement Board of the Employees' Retirement System of Rhode Island,* 567 A.2d 358, 361 (R.I.1989). In contrast, the Rhode Island Constitution establishes express limitations upon the plenary power inhering in the General Assembly. *In re Advisory Opinion to the Governor,* 612 A.2d at 14; *Nugent v. City of East Providence,* 103 R.I. 518, 525, 238 A.2d 758, 762 (1968). Therefore, the General Assembly remains a reservoir of all power that has not been specifically divested or prohibited in express terms by the Rhode Island and Federal Constitutions.

With these principles in mind, we are of the opinion that section 7 does not limit the General Assembly's power to determine the scope and organization of the bargaining unit representing police officers in the instant case. Given the varying degrees of power and responsibility chiefs of differing locales possess, we cannot say that by including chiefs of police as members of local town and city police bargaining units, §§ 28–9.2–3 and 28–9.2–5 per se violate article 3, section 7.

As we noted in *Gallucci,* albeit prior to the adoption of section 7, whether such a labor classification results in a "severe conflict of interest" between the chief of police and members of the union that is authorized to bargain on his or her behalf ultimately turns on an evaluation of a particularized factual situation. *Gallucci,* 477 A.2d at 619. Despite the subsequent ratification of article 3, section 7, we are of the opinion that *Gallucci's* case-by-case type of analysis should be utilized in determining whether a particular statute violates article 3, section

---

**3.** Even though Lincoln cites both sections 7 *and* 8 of article 3, of the Rhode Island Constitution the town's argument centers solely on section 7.

As such, we limit our inquiry and holding to section 7.

7's mandate that public officials "avoid the appearance of impropriety." We believe such an individualized evaluation is imperative in light of the virtually standardless reach of section 7's sweeping directive. Therefore, whether the General Assembly's inclusion of chiefs of police as members of local police bargaining units violates article 3, section 7, must be evaluated in light of a particular chief's powers, responsibilities, policy-making authority, and the extent of that chief's actual involvement in negotiations.

◼ Applying these factors to the instant case, we believe Strain's inclusion in lodge No. 22 while simultaneously occupying the position of chief of police of Lincoln would not violate section 7. We note that sec. 6–6(1) of article VI of the Lincoln Town Charter gives the town administrator the power to appoint and remove all officers and employees of the town including the chief of police. Additionally, the chief can only make rules and regulations concerning the conduct of all officers and subordinates with the specific approval of the town administrator and the town council. See Lincoln Town Charter, art. IX, sec. 9–2(2). A policemen's removal or firing for disciplinary reasons is in large part governed by the Law Enforcement Officers' Bill of Rights. See G.L.1956 (1993 Reenactment) chapter 28.6 of title 42. All officers below the rank of chief are appointed, promoted or removed by the town administrator. See Lincoln Town Charter, art. IX, sec. 9–1(2). Likewise, salary increases are exclusively in the hands of the town council and town administrator. See Lincoln Town Charter, art. VI, sec. 6–6(4). Finally, there is nothing in the record indicating that Strain was in any way involved in negotiations between Lincoln and lodge No. 22.

◼ Consequently, we are of the opinion that §§ 28–9.2–3 and 28–9.2–5 neither facially conflict with article 3, section 7 nor does their specific application in the instant case violate section 7.

II

SHOULD THE POSITION OF CHIEF OF POLICE OF THE LINCOLN POLICE DEPARTMENT BE EXCLUDED FROM THE BARGAINING UNIT REPRESENTED BY LINCOLN LODGE NO. 22 ON THE BASIS OF PUBLIC POLICY?

◼ Lincoln next asserts that by requiring Strain's inclusion in the same bargaining unit as his officers, §§ 28–9.2–3 and 28–9.2–5 endanger the professional reputation of the chief, put Lincoln on unsure footing in the management of its police force, and undermine the central mission of the police force of maintaining the health, safety and welfare of the town's residents. Although we have previously questioned the wisdom of such a classification in Gallucci, supra, we nonetheless cannot say that the General Assembly's inclusion of chiefs of police in local bargaining units violates any provision of the Federal or State Constitutions. See In re House of Representatives, 575 A.2d 176, 177 (R.I.1990) (fundamental principle in deciding the constitutionality of legislation is that " 'question is purely one of legislative power and not at all one of sound policy' ").

◼ We believe that whether a particular application of §§ 28–9.2–3 and 28–9.2–5 violates a constitutional imperative or a provision of the Ethics Code must be evaluated with the same factors used in analyzing violations of article 3, section 7's directive that public officials and employees "avoid the appearance of impropriety." These factors include, but are not limited to, a particular chief's powers, responsibilities, policy-making authority, and the extent of that chief's actual involvement in negotiations.

◼ As we previously noted in this decision, in his capacity as chief of police of Lincoln, Strain has no power to appoint, remove or promote officers. See Lincoln Town Charter, art. IX, sec. 9–1(2). Additionally, Strain can only make rules and regulations concerning the conduct of officers and subordinates with the specific approval of the town administrator and the town council. See Lincoln Town Charter, art. IX, sec. 9–2(2). Finally, there is nothing in the record to indicate that Strain was an active participant in the negotiations on either side. Therefore, we are of the opinion that Strain, as chief of police of the Lincoln police department,

should not be excluded from the bargaining unit represented by lodge No. 22 on the basis of public policy.

## III

SHOULD §§ 28–9.2–3 AND 28–9.2–5 BE DECLARED UNCONSTITUTIONAL, ILLEGAL, VOID AND/OR UNENFORCEABLE TO THE EXTENT THAT THEY PURPORT TO REQUIRE THE INCLUSION OF THE CHIEF OF POLICE OF THE TOWN OF LINCOLN IN THE FOP BARGAINING UNIT IN CONTRADICTION TO ETHICS LAWS AND PRONOUNCEMENTS?

Lincoln next avers that §§ 28–9.2–3 and 28–9.2–5 violate various provisions of the Rhode Island Code of Ethics, chapter 14 of title 36, and Ethics Commission Advisory Opinion No. 9. Lincoln initially argues that as a member of a collective-bargaining unit whose purpose is to obtain optimal pay and fringe benefits for its members, Strain necessarily becomes a "business associate" of his fellow members of Lodge No. 22. *See* § 36–14–2(8), as amended by P.L.1992, ch. 396, § 1, (" 'Business associate' means a person joined together with another person to achieve a common financial objective"). Section 36–14–7(a), as amended by P.L.1992, ch. 132, § 1, provides that "[a] person * * * has an interest which is in substantial conflict with the *proper discharge of his or her duties* or employment in the public interest and of his or her responsibilities as prescribed in the laws of this state, if he or she has reason to believe or expect that * * * his or her * * * *[b]usiness associate* * * * will derive a direct monetary gain or suffer a direct monetary loss, as the case may be, by reason of his or her official activity." (Emphasis added.) Since Strain as chief of police recommends *promotion or disciplines subordinates* in the same collective-bargaining unit, Lincoln argues, Strain's official activity will result in a direct monetary gain or loss to his fellow "business associates." Therefore, Lin-

coln contends, Strain will be in "substantial conflict with the proper discharge of his * * * duties" as is specifically prohibited by § 36–14–5(a), as amended by P.L.1992, ch. 436, § 1.

We are of the opinion that Lincoln's interpretation of §§ 36–14–5(a) and 36–14–7(a) is erroneous. Section 36–14–7(a) is specific in prohibiting a "business associate" as defined by § 36–14–2(8) from deriving a "*direct* monetary gain" or "loss" by reason of a fellow associate's activities conducted in that associate's official capacity. (Emphasis added.) In his official capacity as chief of police, Strain has no power to grant salary increases to his officers. *See* Lincoln Town Charter, art. VI, sec. 6–6(4). Likewise, all officers are appointed, promoted, or removed by the town administrator. *See* Lincoln Town Charter, art. IX, sec. 9–1(2).

 Therefore, even assuming Strain and lodge No. 22 would become "business associates" per § 36–14–2(8), Strain's powers as chief of police, *see* Lincoln Home Rule Charter article IX, are not of such a substantial nature as to result in the type of "direct monetary gain" or "loss" prohibited by § 36–14–7(a). As such, Strain's inclusion *into* lodge No. 22 would not violate § 36–14–5(a).

The town further complains that as a department head of Lincoln, Strain is privy to confidential information. Since the town contends that the members of the bargaining unit are "business associates" per § 36–14–2(8), they argue that if included in lodge No. 22, Strain could be placed in a position violative of § 36–14–5(d).[4]

 We note that by its own terms § 36–14–5(d) is a fact-specific statute. The mere act of a chief of police belonging to a local police bargaining unit would not implicate § 36–14–5(d). Instead, there must be specific articulable facts indicating that a chief has actually *misused* his or her public office or has *divulged* confidential information garnered through his or her official position for

4. General Laws 1956 (1990 Reenactment) § 36–14–5(d), as amended by P.L.1992, ch. 436, § 1 provides:

"No person subject to this code of ethics shall use in any way his or her public office or

confidential information received through his or her holding any public office to obtain financial gain, other than that provided by law, for him or herself * * * or business associate * * *."

a transgression of § 36–14–5(d) to occur. In the instant case, we are aware of no such facts. Therefore, Strain would not be in violation of § 36–14–5(d) if he simply joined lodge No. 22.

The town still further contends that Strain's required inclusion in lodge No. 22 impermissibly contradicts advisory No. 9 issued on May 10, 1990. *See In re Advisory Opinion to the Governor,* 612 A.2d at 19 (Legislature cannot enact ethics laws in conflict with those enacted by the commission). Advisory No. 9 clearly states that "the Rhode Island Code of Ethics will not permit a Chief of a city or town police department from simultaneously serving as a member of a collective bargaining unit pursuant to a contract between said municipality and the applicable police union." In reaching this conclusion, the commission relied heavily on § 36–14–5(a), (d), and (f). Additionally, advisory No. 9, by its own terms, is of general applicability, not limited to a specific-fact situation.

However, we are of the opinion that the ethics commission misconstrued § 36–14–5(a), (d), and (f)[5] in reaching its sweeping conclusion in advisory No. 9. Although we are fully cognizant of potential conflicts inhering in the inclusion of a chief of police within a local police bargaining unit, *see Gallucci,* we nonetheless believe that this matter can be adequately addressed only on a fact-specific, individual basis.

■ To reiterate briefly our previous analysis set forth in this opinion, whether a specific chief is in violation of § 36–14–5, subsections (a) and (d), requires an evaluation of an individualized factual situation, with particular emphasis on that specific chief's powers, responsibilities, policy-making authority, and actual conduct in any negotiations. Under such an analysis, as we have previously detailed, Strain has not violated either of these two provisions. Furthermore, we find nothing in the record indicating that

Strain ever participated in negotiations between the town and lodge No. 22. As such, the provisions contained in § 36–14–5(f) have simply not been implicated. Consequently, we are not persuaded that this question is of sufficient general applicability that it should have been addressed in the tenor of a general advisory opinion by the commission. *See In re Advisory Opinion to the Governor,* 612 A.2d at 18 ("any rules, regulations, and decisions rendered by the commission are subject to judicial review").

■ Although we recognize the constitutional power of the General Assembly to include chiefs of police as members of local police bargaining units, we have never endorsed the wisdom of that policy and do not endorse it now. We are of the opinion that including chiefs of police and managerial employees within a bargaining unit creates actual and perceived conflicts of interest.

■ In a companion case, *Fraternal Order of Police, Westerly Lodge No. 10 v. Town of Westerly,* 659 A.2d 1104 (R.I.1995), we recognize the authority of interest arbitrators to fashion collective-bargaining agreements that exclude the chiefs of police as well as other high ranking officers. That case is not in conflict with this opinion. We have already held that parties to collective bargaining agreements may waive or exclude membership of top ranking policemen in the bargaining unit. *Gallucci,* 477 A.2d at 619. In the Westerly case the parties were unable to resolve all issues by agreement and, therefore, submitted such issues to a panel of interest arbitrators. The interest arbitrators resolved one of the issues by excluding the lieutenant, the captain, and the chief of the Westerly police department from the collective-bargaining unit. In so deciding, the interest arbitrators made a determination that the parties would have been able to make themselves by agreement. Under this submission, this determination was within the scope of their authority. In choosing to de-

---

**5.** Section 36–14–5(f), as amended by P.L.1992, ch. 436, § 1 provides:

"No business associate of any person subject to this code of ethics shall represent him or herself or any other person * * * before the state or municipal agency of which the person

is a member or by which the person is employed unless * * * (ii) the person subject to this code of ethics shall recuse him or herself from voting on or otherwise participating in the agency's consideration and disposition of the matter at issue."

part from the terms of the Policemen's Arbitration Act, either the parties or an interest arbitration panel has the flexibility to fashion an agreement that serves the best interests of the local community and the police union.

Nothing in this opinion should be construed to prohibit such action on the part of an interest arbitration panel or on the part of the adversaries to the collective-bargaining agreement to achieve a resolution as between themselves.

## IV

DO §§ 28–9.2–3 AND 28–9.2–5 VIOLATE THE TOWN OF LINCOLN'S RIGHT TO SELF–GOVERNMENT AS GUARANTEED BY ARTICLE 13, SECTIONS 1, 2, AND 4 OF THE RHODE ISLAND CONSTITUTION?

Lincoln next contends that the Policemen's Arbitration Act interferes with its right to self-government as guaranteed by article 13, sections 1, 2, and 4, of the Rhode Island Constitution. The town specifically avers that by forcing them to include Strain in lodge No. 22, the Policemen's Arbitration Act impermissibly requires the town to rewrite article IX of its charter, which sets forth the chief of police's duties and responsibilities, to avoid resulting ethical and managerial problems.

■ Traditionally the cities and towns of Rhode Island "were held to be creatures of the Legislature having no inherent right to self-government but deriving all of their authority and power from the Legislature." *Lynch v. King*, 120 R.I. 868, 876, 391 A.2d 117, 122 (1978) (citing *City of Providence v. Moulton*, 52 R.I. 236, 246, 160 A. 75, 79 (1932)). The ratification of the twenty-eighth amendment to the Rhode Island Constitution, which was readopted in its entirety as article 13 in November of 1986 by the Rhode Island electorate, altered this view granting every city and town the right to legislate with respect to local concerns. However, none of the grants of authority in article 13 "has an inhibiting effect on the General Assembly's overriding power to legislate *even on local matters* as long as it does so in a

general act applicable to all cities and towns alike and does not affect the form of government of any city or town." (Emphasis added.) *City of Cranston v. Hall*, 116 R.I. 183, 186, 354 A.2d 415, 417 (1976); *see* R.I. Const. art. 13, sec. 4.

With these principles in mind, we are of the opinion that the Policemen's Arbitration Act does not violate Lincoln's right to self-government. The act, by its own terms, applies uniformly, requiring the inclusion of every city and town's chief of police in that municipality's local police bargaining unit. *See Hall*, 116 R.I. at 186, 354 A.2d at 417 (critical fact is that the legislation applies equally to all cities and towns); R.I. Const. art. 13, sec. 4. Furthermore, even if the town were forced to rewrite article IX of its Home Rule Charter, which is dubious given our disposition of the seven certified questions in the instant case, such a revision would not impact the basic form or structure of Lincoln's government. *See* article 13, section 4; *see also Hall*, 116 R.I. at 186, 354 A.2d at 417.

■ Additionally, in *Lynch v. King, supra*, we upheld the validity of the Policemen's Bill of Rights from a home rule challenge, stating that the enactment of the thirteenth "amendment in no way affected the sovereignty of the state with regard to the exercise of the police power since police officers, while they may be appointed by the individual city or town, act for all the inhabitants of the state and not only for the residents of the appointing community." 120 R.I. at 876–77, 391 A.2d at 122. Therefore, given the Policemen's Arbitration Act's uniform application, its negligible impact on Lincoln's form of government and the statewide collective importance of municipal police officers, we hold that the act as applied to Lincoln does not violate the town's right to self-government as guaranteed by the Rhode Island Constitution.

## V

IS THE STATUTORY DEFINITION OF THE TERM "POLICEMEN" SO AS TO INCLUDE THE CHIEF OF POLICE VOID AND UNENFORCEABLE AS AN

OVERBROAD DELEGATION OF AUTHORITY IN VIOLATION OF CONSTITUTIONAL MANDATES?

Lincoln next avers that the Policemen's Arbitration Act, by allowing the participation of chiefs of police in local police bargaining units, implicitly authorized the Rhode Island State Labor Relations Board (RISLRB) to certify that a chief and his subordinate officers constitute an "appropriate unit for the purposes of collective bargaining," pursuant to G.L.1956 (1986 Reenactment) § 28–7–14. *See also* § 28–7–15. The town complains that this implicit delegation to the RISLRB violates the people of Lincoln's right to structure their local government. *See* R.I. Const. art. 13, sec. 4.

■ However, we are of the opinion that there has been no delegation by the General Assembly to the RISLRB in the instant case. By enacting the Policemen's Arbitration Act, the Legislature has specifically granted chiefs of police the right to participate in local police bargaining units. Any chief who so chooses must be included in *whichever* local police officer's bargaining unit the board certifies. As such, the RISLRB has no unilateral power to exclude or include chiefs from any bargaining unit it ultimately certifies. *See* §§ 28–9.2–3 and 28–9.2–5. Indeed, the certification of a police bargaining unit, as it pertains to the inclusion of a chief of police, is merely a perfunctory execution of the General Assembly's express directives.

However, even if there had been a delegation by the Legislature to the RISLRB it would be proper. *See Lynch v. King,* 120 R.I. 868, 391 A.2d 117 (1978). We note that the town is not asserting that the alleged delegation to the RISLRB is void because of insufficient standards by which to guide the board in the exercise of its delegated power. *See Thompson v. Town of East Greenwich,* 512 A.2d 837, 842 (R.I.1986) ("any unconditional delegation of the General Assembly's legislative power is unconstitutional and void"). Rather, Lincoln's argument is essentially a recasting of its previous complaint that the General Assembly has impermissibly intruded on the town's right to self-government, albeit through an alleged delegation of power to the RISLRB. *See* R.I. Const. art.

13, secs. 1, 2, and 4. As we have previously held in this opinion, the Legislature's enactment of the Policemen's Arbitration Act did not violate the town's right to self-government as guaranteed by article 13. Therefore, even if there were a delegation of power to the RISLRB, such a delegation would not violate the town's right to self-government as the board has been duly vested with legislative power that is not in conflict with article 13.

Lincoln also contends that the alleged delegation to the RISLRB intrudes into the constitutional mandates of the commission. However, as we have already held in this opinion, there has been no delegation to the RISLRB. As such, the RISLRB has not intruded into the constitutional mandates of the commission.

## VI

DOES THE LEGISLATIVE DEFINITION OF THE TERM "POLICEMEN" BY THE GENERAL ASSEMBLY, AS APPLIED, VIOLATE THE "SEPARATION OF POWERS" DOCTRINE TO THE EXTENT THAT THE RHODE ISLAND ETHICS COMMISSION IS OR MAY BE VESTED WITH THE SOLE CONSTITUTIONAL AUTHORITY TO PROMULGATE "A CODE OF ETHICS INCLUDING * * * PROVISIONS ON CONFLICTS OF INTEREST * * *, USE OF POSITION [AND] CONTRACTS WITH GOVERNMENT AGENCIES" PURSUANT TO ARTICLE 3, SECTION 8, OF THE RHODE ISLAND CONSTITUTION?

Lincoln next avers that the General Assembly's definition of "policemen" as set forth in the Policemen's Arbitration Act violates the doctrine of separation of powers by intruding into the commission's express constitutional authority to promulgate an ethics code. Specifically, the town points out that in advisory No. 9, the commission found that the inclusion of a chief of police in a collective-bargaining unit for local police officers violated the Rhode Island Code of Ethics. Lincoln complains that the Legislature has now usurped the commission's power in violation of the separation-of-powers doctrine be-

cause the General Assembly may not enact ethics laws that conflict with ethics rules and decisions rendered by the commission. *See In re Advisory Opinion to the Governor*, 612 A.2d at 19.

In *In re Advisory Opinion to the Governor*, we recently had occasion to address the impact that ratification of the ethics amendment has had on the powers and responsibilities of the branches of Rhode Island government, particularly with respect to the General Assembly. We held that this "amendment merely shifted the legislative power regarding ethics away from the General Assembly. It did not, however, divest the General Assembly of its 'whole' legislative power or the power to enact ethics laws that are not in conflict with those enacted by the commission." 612 A.2d at 19. Likewise, nothing in the amendment divested the General Assembly of powers necessary to its functioning. *Id.* We also reaffirmed that "any rules, regulations, and decisions rendered by the commission are subject to judicial review pursuant to this court's power to review questions of law as provided in article 10, section 2 [of the Rhode Island Constitution]." 612 A.2d at 18. With these principles in mind, we turn to address the town's contention.

■■■ As we have previously held in this opinion, advisory No. 9 misinterpreted § 36-14-5(a), (d), and (f) in reaching its sweeping conclusion that no chief of police, regardless of his or her peculiar circumstances, can become a member of the local police officers' bargaining unit. Therefore, because advisory No. 9 misconstrued the ethics code to reach its conclusion, the doctrine of separation of powers has simply not been implicated in the instant case as there has been no conflict between the General Assembly's enactment of §§ 28-9.2-3 and 28-9.2-5 and the commission's constitutional prerogatives. *In re Advisory Opinion to the Governor*, 612 A.2d at 19.

## VII

IF THE CHIEF IS DEEMED NOT TO BE A PROPER MEMBER OF THE BARGAINING UNIT, WOULD ANY BENEFITS NEGOTIATED BY THE UNION FOR ITS MEMBERS PRIOR TO THE RENDERING OF THIS COURT'S DECISION ACCRUE TO THE CHIEF OR WOULD HIS EXCLUSION APPLY RETROACTIVELY TO THE CONTRACT TERM COMMENCING ON JULY 1, 1993?

Given our disposition of the previous certified questions, we need not reach this question.

Consequently we answer questions 1 through 6 in the negative. In view of our analysis we do not reach question 7.

BOURCIER, J., did not participate.