DECISION
Before the Court is an appeal from a decision of the Rhode Island Ethics Commission (Commission), finding appellant in violation of various provisions of the Rhode Island Code of Ethics. Specifically, the Commission decided:
"Based upon the findings of fact, we make the following conclusions of law:
 1. The Respondent, as a Chair and a Member of the Rhode Island Board of Governors for Higher Education, at the time of a vote taken on May 21, 1992, had an interest which was in substantial conflict with the proper discharge of his duties and employment in the public interest and of his responsibilities as prescribed in the laws of this state, to wit his representation of the developers of Providence Place/Mall of New England, Providence Place, Inc., all in violation of R.I.G.L. § 36-14-5(a) and as defined in R.I.G.L. 36-14-7(a);
 2. The Respondent, as Chair and a Member of the Rhode Island Board of Governors for Higher Education, at the time of a vote taken on May 21, 1992, had other employment which impaired his independence of judgment as to his official duties, to wit, his simultaneous representation of the developers in relation to the development of Providence Place/Mall of New England, Providence Place, Inc., all in violation of R.I.G.L. 36-14-5(b); and,
 3. The Respondent, as Chair and a Member of the Rhode Island Board of Governors for Higher Education, at the time of a vote taken on May 21, 1992, failed to file a Statement of Conflict of Interest with respect to discussion and votes relating to the relocation of URI/CCE and with respect to certain changes to be assessed against the developer, all in violation of R.I.G.L. § 36-14-6."
Although the Commission assessed no penalties for the violation of G.L. §§ 36-14-5(a) and 36-14-5(b), it did, however, assess appellant a fine of $500.00 for the violation of G.L. § 36-14-6.
Appellant, Richard Licht, now contests the ruling of the Ethics Commission pursuant to G.L. 1956 § 42-35-15. Specifically, appellant argues that there was no conflict of interest with his official duties and that his employment did not impair his independent judgment with respect to his official duties. Appellant seeks a reversal of the Commission's final decision.
FACTS/TRAVEL
This matter arose in August of 1994 when one Allen M. Demirjian filed a complaint (94-95) with the Commission. The complaint alleged that appellant, Richard Licht, had violated provisions of the Rhode Island Code of Ethics in his conduct as Chairman of the Board of Governors for Higher Education for the State of Rhode Island. While serving as Chairman for the Board of Governors, appellant was also employed by Licht and Semonoff. Licht and Semonoff served as counsel for the developer of the Providence Place Mall.
On or about January 17, 1995, the Commission initially determined that Demirjian's complaint set forth potential violations of the Code of Ethics. Appellant filed an answer to the complaint; an investigation ensued and was completed on or about February 22, 1995. During the investigation of complaint (94-95), the Commission received a second complaint, (95-1), also filed against appellant. This complaint (95-1) also questioned appellant's conduct as Chairman of the Board of Governors of Higher Education The Commission made a preliminary determination that complaint 95-1 alleged possible violations of the Code of Ethics. Appellant filed an answer to the complaint; an investigation ensued and was concluded on or about July 6, 1995.
On or about December 18, 1995, the commission held a probable cause hearing on both complaints (95-1) and 94-95). Although the Commission found that probable cause existed to support violations of 36-14-5(a),(b), 36-14-6 and 36-14-7(a), it concluded that additional allegations contained in complaint 95-1, mainly those "allegations relating to the [appellant's] representation of Pyramid before the Rhode Island Port Authority while he and his law firm were employed as general counsel to the Airport Corporation," were not supported by probable cause and, as such, dismissed them with prejudice. Having found probable cause did exist to support the allegations in complaint 94-95, the Commission, as required by 36-14-12(c)(4), notified the appellant of their findings and set a date for hearing on the matter.
The hearing was held on or about March 25, 1997. Appellant was present and served as the sole witness. The parties submitted the following Agreed Statement of Facts.
 "1. From at least 1965 until approximately January, 1996, the University of Rhode Island College of Continuing Education ("URI/CCE") was housed in Providence, Rhode island on a parcel of land of approximately 6.6 acres in size. This land consists of approximately sixty percent of a total land area which is commonly referred to as the future site of the Providence Place Mall.
 2. Neither the University of Rhode Island nor the R.I. Board of Governors for Higher Education ("BOG") ever held title to this parcel of land. At all times, up to and including the present, title to this land has been held by either the State of Rhode Island or the Rhode Island Port Authority (now the Rhode Island Economic Development Corporation). The status of URI/CCE and the BOG vis-a-vis the property was, at most, that of tenants at will.
 3. Respondent, Richard Licht, is a former Lieutenant Governor and State Senator of the State of Rhode Island. He is a partner in the law firm of Licht 
Semonoff (now Tillinghast, Licht Semonoff). Licht Semonoff was formed as a result of the merger of two law firms, Letts, Quinn 
Licht, P.C. and Levy, Goodman, Semonoff Gorin. Mr. Licht was a shareholder in the former entity, but his active participation in that firm ended as of December 31, 1984, before the merger, when he became Lieutenant Governor of the State of Rhode Island. Mr. Licht had no interest in Licht Semonoff until January, 1989, when his term of office ended. At that time, he returned to the practice of law and became a partner of Licht Semonoff. He has been a partner at Licht and Semonoff and its successor firm from that date to the present.
 4. In 1986 or 1987, the Port Authority designated Providence Place Associates to be the developer of two parcels of land, one being the site of URI/CCE, to be developed into the future Providence Place Mall. At about the same time, Licht 
Semonoff was engaged to provide legal services by Providence Place Associates a/k/a Providence Place Inc. [later known as Providence Place Group ("PPG")], which is the developer of Providence Place Mall.
 5. During the 1988 legislative session, the General Assembly amended Gen. Laws R.I. sec. 37-7.1-1 by adding subsection (c) which authorized the Director of the R.I. Department of Economic Development to sell, transfer and convey three parcels of land to the Rhode Island Port Authority. One of those parcels was the land on which URI/CCE is located. Licht Semonoff has never represented the Rhode Island Port Authority. Mr. Licht, who was then Lieutenant Governor, did not participate in the General Assembly's decision to move URI/CCE off the parcel.
 6. On October 25, 1988, the State of Rhode Island, the Port Authority and Providence Place, Inc. entered into a three-way option agreement granting Providence Place Inc. an option to purchase the URI/CCE site for development of the mall. The BOG was not a party to that option agreement. Licht Semonoff represented — Providence Place, Inc. in connection with the aforesaid option agreement.
 7. The option provided that if and when it were exercised, the State and the Port Authority must promptly take whatever steps were necessary to execute the transfer of the URI/CCE parcel to the Port Authority. The option was exercisable at any time up to January 25, 1990.
 8. The option agreement was amended by agreement on January 23, 1990 to extend the option to ten days after the earlier of the two following events: an anticipated amendment to Gen. Laws R.I. 37-7.1-1 or March 26, 1990.
 9. On March 22, 1990, Providence Place Inc. notified the Port Authority that it was exercising the option to purchase the URI/CCE parcel, with closing to occur on June 21, 1991. On various dates thereafter, the closing was deferred.
 10. On June 6, 1991, Mr. Licht became a member of the R.I. Board of Governors for Higher Education. In January, 1992 he was designated as Chairman of the BOG.
 11. On March 2, 1992, the Port Authority voted to extend the closing date from March 31, 1992, to December 31, 1992.
 12. On May 21, 1992, Mr. Licht attended a meeting of the Board of Governors whereat certain votes were cast by the BOG, as reflected in its minutes. (See Exh. A minutes of meeting of Board of Governors of May 21, 1992, part "E").
 13. In February, 1994 the State, the Port Authority, and Providence Place, Inc. entered into a development agreement.
 14. The sole question before the Commission is whether on May 21, 1992, Mr. Licht violated sections 36-14-5(a), 36-14-5(b), 36-14-7(a) and 36-14-6 of the Code of Ethics in participating in votes of the Board of Governors for Higher Education to accept a report of the URI/CCE site selection committee, explore alternative uses for the former Falstaff Brewery site and recommend to the State and the Port Authority that they assess the mall developer an amount of money to cover the cost of interim needed repairs at the existing URI/CCE facility.
Standard of Review
The review of the instant appeal is controlled by R.I.G.L. § 42-35-15(g), which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 "(1) In violation of constitutional or statutory provisions;
 "(2) In excess of the statutory authority of the agency;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error of law;
 "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
By enacting the Administrative Procedures Act, the Legislature has assigned to various agencies, such as the Ethics Commission, the primary responsibility to decide contested cases, which involve their powers and duties. Courts are, therefore, required to give those agencies considerable latitude when reviewing their decisions. Quite obviously, such deference must have limits or else judicial review mandated by 42-35-15 of the Act would be meaningless. The question has been how to strike a proper balance between deference and abdication. In short, the reviewing court is not required to simply rubberstamp agency decisions. In a series of cases, the Rhode Island Supreme Court has had occasion to decide whether the reviewing court had the right and, indeed, the power to review and, where appropriate, reverse the agency decisions.
The court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 272 (R.I. 1981). Questions of law, however, are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflict of InterestCommission, 509 A.2d at 458. The Superior Court's role is to examine whether any competent evidence exists in the record to support the agency's findings. Rocha v. Public Util. Comm'n.694 A.2d 722, 725 (R.I. 1997)(per curiam). Although this Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence, Rhode Island PublicTelecommunications Authority, et al v. Rhode Island LaborRelations Board, et al., 650 A.2d 479, 485 (R.I. 1994), it will not allow "agency attempts to pass off factually unsupported and legally impermissible inferences in the name of credibility determinations and administrative factfinding. Administrative fiat and surmise cannot alone sustain an agency's factual findings." State v. R.I. Labor Relations Bd., 694 A.2d 24, 30 (R.I. 1997).
Code of Ethics
Rhode Island General Laws mandate that public officials and employees comply with a code of ethics. As such, it is the duty of public officials to "adhere to the highest standards of ethical conduct, respect the public trust and the rights of all persons, be open, accountable, responsive, avoid the appearance of impropriety, and not use their position for private gain or advantage." G.L. § 36-14-1. The standard for proving a violation of the code of ethics is "knowing and willful." G.L. § 36-14-13(a)(8); See DiPrete v. Morsilli, 635 A.2d 1155, 1163-64 (R.I. 1994); See also Carmody, 509 A.2d at 460-61 (R.I. 1986).
Section 36-14-5 contains a list of activities which are prohibited by the code of ethics. Among those prohibited activities relevant to this case are:
 "No person subject to this code of ethics shall have any interest, financial or otherwise, direct or indirect, or engage in any business, employment, transaction, or professional activity, or incur any obligation of any nature, which is in substantial conflict with the proper discharge of his or her duties or employment in the public interest and of his or her responsibilities as prescribed in the laws of this state, as defined in § 36-14-7." G.L. § 36-14-5(a).
 "No person subject to this code of ethics shall accept other employment which will either impair his or her independence of judgment as to his or her official duties or employment or require him or her, or induce him or her, to disclose confidential information acquired by him or her in the course of and by reason of his or her official duties." G.L. § 36-14-5(b).
Section 36-14-6 outlines procedures an official must take when his or her "official duties" require him or her "to take an action, make a decision, or refrain therefrom that will or can reasonably be expected to directly result in an economic benefit to the person, or spouse (if not estranged), or any dependent child of the person, or business associate or any business by which the person is employed or which the person represents . . ." These procedures include preparing and delivering a statement of conflict of interest to the commission. G.L. § 36-14-6.
Although discussed in 36-14-5(a), the term "substantial conflict" is actually defined in section 36-14-7(a):
 "A person subject to this code of ethics has an interest which is in substantial conflict with the proper discharge of his or her duties or employment in the public interest and of his or her responsibilities as prescribed in the laws of this state, if he or she has reason to believe or expect that he or she or any person within his or her family or any business associate, or any business by which the person is employed or which the person represents will derive a direct monetary gain or suffer a direct monetary loss, as the case may be, by reason of his or her official activity."
"A public official has reason to believe or expect a Conflict of Interest exists when it is `reasonably forseeable.' The probability must be greater than `conceivably', but the Conflict of Interest need not be certain to occur." Regulation 36-14-7001. As stated in DiPrete, "`more than a blind expectation of monetary gain must be demonstrated." DiPrete 635 A.2d at 1165.
Various cases have examined the economic benefit or monetary gain that can create a conflict of interest. In Celona v. RhodeIsland Ethics Comm'n. 544 A.2d 582 (R.I. 1988), the Rhode Island Supreme Court found that members of a town council had violated, inter alia, 36-14-4(a) (now § 36-14-5) when they passed a resolution, which when approved by the General Assembly, would result in an increase in their compensation. Id. at 582-83. The court rejected petitioners' argument that there was no conflict as the council lacked power to directly increase their compensation. Id. at 585. The court said "that action is always initiated by a request from the city or town council in the form of a resolution usually containing the exact language of the amendment requested. . . . The amendment would never have been enacted if it had not been requested by the council." Id. at 585-86. In Town of Lincoln v. Lincoln Lodge No. 22, 660 A.2d 710
(R.I. 1995), our Supreme Court found that a chief of police's power to "recommend promotion or discipline subordinates in the same collective-bargaining unit" did not violate code of ethics sections 36-14-5(a) or 36-14-7(a). Id. at 717. In its holding, the court rejected the argument that the police chief's "official activity [would] result in a direct monetary gain or loss to his fellow `business associates'" placing him in `substantial conflict with the proper discharge of his * * * duties' as specifically prohibited by § 36-14-5(a) . . ." Id. The court reasoned that the police chief's powers were "not of such a substantial nature as to result in the type of `direct monetary gain' or `loss' prohibited by § 36-14-7(a)." Id.
With respect to conflicts of interest, this court is also mindful of Grassetti v. Weinberger, 408 F. Supp. 142 (N.D. Cal. 1976.) In Grassetti, the plaintiff argued that study group members, who were also in receipt of government grant monies, had conflicts of interest when they rejected plaintiff's proposal for a cancer research grant. Id. at 151-52. In rejecting plaintiff's argument, the court said:
 "In no way would the individuals involved benefit financially by denying grant money . . ., unless it be argued that their denial to him would leave more money in the pot for future proposals from themselves, a possibility of conflict of interest which this court deems to be much too remote." Id. at 152.
Thus, Grassetti stands for the proposition that remote financial interests do not create a conflict of interest.
REVIEW OF AGENCY'S DECISION
The uncontradicted evidence presented to the Ethics Commission, by way of the testimony of the appellant and the facts agreed to, was that URI/CCE, at best, was a tenant at will. Title to the land at issue was in the Port Authority, an agency for which the appellant had no interest. As such, the appellant, as Chairman of the Board of governors for Higher Education, had no authority, real or apparent, to confer a benefit on PPG or indirectly to its counsel.
Further, the vote of May 21, 1992, to "accept" a report from the site selection committee to negotiate with the owners of Narragansett Brewery and/or the Foundry was not a prohibited act under the statute. Further, the record is devoid of any evidence that can reasonably be interpreted to find the appellant had any interest with any person, group or corporation which was affected or could be affected by the acceptance of the site committee's report. Surely, if the appellant had represented anyone at Narragansett Brewery or the Foundry, there would be a reasonable basis to believe he was in violation of the Code of Ethics. But he did not.
36-14-13(a)(4) states:
 "there shall be a presumption of innocence on the part of any person alleged to have violated the provision of the chapter and the burden of proving that the person has violated the provision of the chapter shall be upon those who allege the violation or violations."
At the March 25, 1997 hearing, the attorney for the Commission classified the allegations against appellant as "speculation":
 "Now the response to all of that could be, well gee, that's speculation about whether or not that would have been a benefit or whether or not that would not have been a benefit. And you know, that right, it is speculation, but it is a reasonable possibility that that would be the case, and it's why you don't have a public official with an interest in the matter participating in the votes because the way the code of ethics is written, when public decisions are being made, you want the people making them to have a clean slate. You don't want the chair of the Board of Governors to be sitting considering a location for a school that alls under his jurisdiction to also be representing a private client with a interest. (Tr. 64)
Still, in its decision, the Commission concluded that appellant's action, in voting at the May 21, 1992 meeting of the BOG was violative of the code of ethics sections 36-14-5(a), 36-14-5(b), and 36-14-6:
 "While this Commission appreciates the fact that the land upon which the now under construction Providence Place Mall was last owned by the Rhode Island Port Authority, and not the Board of Governors, we cannot ignore the fact that the actions and recommendations by the Board of Governors as to matters concerning that site in 1992 would, most likely, have a significant effect on the Port Authority's actions. These votes involved recommendations as to the relocation of the URI/CCE site from its location in Providence, and, requests to assess additional changes to the development to the Mall. Clearly, each vote would most likely have a financial impact on the Respondent's clients. (Decision at 10.)
Rank speculation, under any standard of review, does not support the burden of proof required.
CONCLUSION
After a review of the record and the arguments of counsel, this Court finds that the Commission's decision that the appellant violated 36-14-5(a); 36-14-5(b) and 36-14-6 is based on findings which are not supported by reliable, probative and substantial evidence on the record and is affected by error of law. By imposing a fine of $500.00, substantial rights of the appellant were prejudiced. Accordingly, the decision of the Commission is hereby reversed.
Counsel for appellant shall submit the appropriate judgment for entry.
[1] The substance of complaint 95-1 was similar to that of 94-95. The former complaint however, contained further allegations that appellant had violated the Code of Ethics in representing the Pyramid Corporation before the Port Authority while he served on the Board of Governors.